Argued June 18, affirmed July 9, 1918.

# SWENSEN v. SOUTHERN PAC. CO.

(174 Pac. 158.)

**Statutes—Repeal by Implication.**

1. A repeal by implication may be effected when a later conflicts with a prior statute, when one is intended as a substitute for another.

**Statutes—Repeal by Implication—Conflict.**

2. One statute will not be presumed to be repealed by another, unless the two are so obviously in conflict that both cannot be executed.

[As to repeal of statute by implication, see note in 14 Am. Dec. 209; 88 Am. St. Rep. 271.]

**Statutes—Repeal by Revision.**

3. If the new statute revises the subject matter of the old, and is plainly intended as a substitute, it will repeal the old statute.

**Statutes—Repeal—Repugnancy.**

4. One statute is not repugnant to another, unless they relate to the same subject, and are enacted for the same purpose.

**Statutes—Implied Repeal.**

5. If the objects of two statutes are not the same, they will be permitted to stand, although referring to the same subject.

**Railroads—Regulation—Fencing—Statutes.**

6. Section 6972, L. O. L., making a railroad company liable for injury to livestock for failure to fence, is not repealed by Section 6979, requiring the maintenance of fences along railroad tracks for the protection of travelers; the two statutes being cumulative and not enacted to accomplish the same purpose.

**Railroads—Regulation—Fencing.**

7. In the absence of statute, there is no duty to fence a railroad.

From Polk: Harry H. Belt, Judge.

Department 1.

The defendant appealed from a judgment awarding the plaintiff damages for the loss of a calf and a horse struck by cars operated along an unfenced track. Between Black Rock and Salem, Oregon, a line of railway, commonly known as the Salem, Falls City & Western Railroad, is operated by the Southern Pacific Company. The railroad right of way had not been

fenced along its entire length and upon application of the owner of the road the Railroad Commission, now known as the Public Service Commission, made an order on November 7, 1911, relieving the owner ''from the duty of maintaining a fence at those portions of its line remaining unfenced at this time embraced in the above entitled application.''

The plaintiff was in the possession of a tract of land called the Emmens farm, across which the line of railway extended. The track was unfenced throughout its entire course across the farm. In 1915 a car operated by the defendant struck and killed a calf on this unfenced portion of the track and in the same year and at the same place a horse was hit by a car and was so badly injured that it became necessary for the plaintiff to kill the animal. The calf and the horse had been turned out to pasture on the farm and they went upon the track. The order which the Railroad Commission issued in 1911 has never been rescinded but is still in force.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Paul P. Farrens* and *Mr. Ben C. Dey,* with an oral argument by *Mr. Farrens.*

For respondent there was a brief and an oral argument by *Mr. Oscar Hayter.*

HARRIS, J.—The only question for decision is whether the order issued by the Railroad Commission relieved the defendant from liability for stock subsequently killed on its unfenced track; and this question is decided by determining whether or not a statute enacted in 1887 (Laws 1887, page 50), and carried into the present code as Sections 6972 to 6977, L. O. L., in-

clusive, was repealed by an act which was passed in 1909 (Laws 1909, Chapter 158), and codified as Sections 6979 to 6983, L. O. L., inclusive; or to narrow the inquiry to two sections of the Code the question presented by this appeal is whether Section 6972 is repealed by Section 6979, L. O. L. Before attempting to answer the question it will be necessary first to notice the provisions of the act of 1887 and then to direct attention to the statute of 1909.

The act of 1887 contains 6 sections in addition to the emergency clause and is entitled as follows:

"AN ACT for the Protection of Live Stock, and to Compel Payment for Live Stock Killed or Injured on any Unfenced Railroad Track, and to Provide for the Giving of Notice to Owners of such Killing of Live Stock, and Prescribing the Penalty for Failure to Give such Notice, and do (to) Define Negligence in Suits or Actions for the Recovery of the Value of Live Stock so killed or Injured."

Section (1), being Section 6972, L. O. L., provides that any person or corporation operating any railroad within the state shall be liable for the value of any horses or calves or other specified animals killed upon any unfenced track by moving cars. Section (2) states what shall be deemed to be a sufficient fence. Section (3) requires the operator of a railroad line to give a prescribed notice when any animal is killed or injured. Section (4) fixes a penalty for failure to give the notice. Section (5) declares that proof of the killing or injury of stock shall be evidence of negligence and Section (6) designates the persons upon whom process may be served.

The act of 1909 contains 5 sections and bears the following title:

"To provide for the better protection of travelers on railroads by requiring the construction and maintenance of fences along railroad rights of way, and providing penalties for the violation of this act."

Section (1), being Section 6979, L. O. L., provides that every owner or operator of a railroad within the state shall fence and maintain its railroad line,

"except at the crossings of and upon public roads and highways, and within such portions of cities and incorporated towns and villages as are or may be hereafter laid out and platted in lots and blocks, and except at railroad station grounds and except within the boundaries of federal forest reserves, * * *"

Section (2) states that a failure to fence a railroad track shall result in a forfeiture of a hundred dollars per mile of such unfenced track "to be recovered as other penalties are recovered and be paid into the State Treasury." Section (3) authorizes certain officers of the state to maintain *mandamus* proceedings to compel compliance with Section 1. Section (4) fixes a penalty for leaving a gate open and the concluding section reads thus: "The provisions of this act are cumulative to existing remedies." Section (1) of the act of 1909 was amended in 1911, Laws of 1911 Chapter 150. The amendment authorizes the Railroad Commission, after notice and hearing to "suspend the operation of this section as to any particular portion of any line of railroad."

The act of 1911 amending Section 1 of the statute of 1909 is entitled thus:

"To amend Section 6979 of Lord's Oregon Laws, the same being Chapter 158 of the laws of the Legislative Assembly of the State of Oregon for the year 1909."

The first 6 sections of the act of 1887 were carried into the 1887 edition and also into the 1892 edition of

Hill's Annotated Laws of Oregon, as Sections 4044 to Section 4049 inclusive; and when Bellinger & Cotton's Annotated Codes and Statutes were issued in 1902, these six sections appeared as Sections 5139 to 5144 inclusive. When the compilation known as Lord's Oregon Laws was published in 1910, pursuant to the authority of an act approved in March, 1909, the entire six sections of the statute of 1887 with the whole of the statute of 1909 were made a part of that Code.

The plaintiff contends that the order made by the Railroad Commission merely relieved the owner of the railroad from the penalty fixed by Section 2 of the act of 1909, codified as Section 6980, L. O. L., and that it did not relieve the defendant from liability to the owner of stock killed or injured upon the unfenced track. The company argues that the act of 1909 repealed the act of 1887, and that after such repeal the act of 1909 was the only statute in force requiring tracks to be fenced; and that therefore relief from the duty imposed by the act of 1909, left the company relieved of all duty to fence its tracks.

1–5. The statute passed in 1909 does not expressly repeal any prior law. If the act of 1887 is repealed at all it is only by implication. A repeal by implication may be effected when a later conflicts with a prior statute or when one is intended as a substitute for another act. It is so easy for the legislature, when adopting one statute, to say that another statute on the same subject is repealed, and an intention to repeal, when it exists, is so likely to be expressly stated, that the courts will not presume that the later repeals the prior statute unless the two are so obviously in conflict that both cannot be executed. A repeal by implication is effected if there be such positive repugnancy between the new and the old enactments that they cannot stand

together or be harmonized; but the courts will, however, if possible, construe the two statutes together and adopt any reasonable construction which will sustain both of them: *Palmer* v. *State,* 2 Or. 66, 69; *Winters* v. *George,* 21 Or. 251, 257 (27 Pac. 1041); *Pacific Elevator Co.* v. *Portland,* 65 Or. 349, 387 (133 Pac. 72, 46 L. R. A. (N. S.) 363); *Messick* v. *Duby,* 86 Or. 366, 369 (168 Pac. 628). If the new statute revises the subject matter of the old and is plainly intended as a substitute it will operate as a repeal of the old statute: *Strickland* v. *Geide,* 31 Or. 373, 376 (49 Pac. 982). One statute is not repugnant to another unless they relate to the same subject and are enacted for the same purpose: *Pacific Elevator Co.* v. *Portland,* 65 Or. 349, 388 (133 Pac. 72, 46 L. R. A. (N. S.) 363). As said in *Haywood* v. *Mayor etc. of Savannah,* 12 Ga. 404, 409, "where there is a difference in the whole purview of two statutes, apparently relating to the same matter, the former remains of force." If the objects of both statutes are not the same, the two statutes will be permitted to stand although they may refer to the same subject: *United States* v. *Claflin,* 97 U. S. 546, 552 (24 L. Ed. 1082); *Perrit* v. *Crouch,* 5 Bush (68 Ky.), 199; *McMillan* v. *Board of Commrs. of Payne County,* 14 Okl. 659 (79 Pac. 898). Nor is it sufficient, as said by Mr. Justice STORY in *Wood* v. *United States,* 16 Pet. 342, 362 (10 L. Ed. 987), "to establish, that subsequent laws cover some or even all of the cases provided for by it; for they may be merely affirmative, or cumulative or auxiliary": See, also, *Bank of British North America* v. *Cahn,* 79 Cal. 463 (21 Pac. 863); *State* v. *Wells,* 210 Mo. 601 (109 S. W. 758); *Jessee* v. *De Shong* (Tex. Civ.), 105 S. W. 1011. Speaking of two acts or provisions of law relating to the same subject Mr. Justice FIELD says in *Chicago M. & St. P. Ry. Co.* v.

*United States,* 127 U. S. 406, 409 (32 L. Ed. 180, 8 Sup. Ct. Rep. 1194):

"Effect is to be given to both, if that be practicable. If the two are repugnant, the latter will operate as a repeal of the former to the extent of the repugnancy. But the second act will not operate as such repeal merely because it may repeat some of the provisions of the first one, and omit others, or add new provisions. In such cases the later act will operate as a repeal only where it plainly appears that it was intended as a substitute for the first act."

6. Tested by the standards which have been so firmly established in our system of jurisprudence the act of 1909 does not repeal the act of 1887.

7. In the absence of a statute there is no duty to fence a railroad: *Todd* v. *Pacific Ry. & Nav. Co.,* 59 Or. 249, 252 (110 Pac. 391, 117 Pac. 300). The primary purpose of the act of 1887 was as stated in its title "for the protection of livestock, and to compel payment for livestock killed or injured on any unfenced railroad track"; and it is worthy of notice that the emergency clause found in Section (7) of the act declares that:

"Inasmuch as loss of stock, without adequate means of obtaining remuneration therefor, is of frequent occurrence in this State, this Act shall take effect and be in force from and after its approval by the Governor."

The primary purpose of the act of 1909 as expressed in its title is:

"To provide for the better protection of travelers on railroads by requiring the construction and maintenance of fences along railroad rights of way, and providing penalties for the violation of this act."

One statute confers a private right while the other creates a public right. One statute was designed for

the benefit of the individual while the other was intended for the benefit of the public: *Perrit* v. *Crouch,* 5 Bush (68 Ky.), 199. To the extent that each statute makes it the duty of the owner of a railroad to fence the tracks each treats of the same subject; but it is obvious that each is for a different purpose.

When the act of 1909 was passed the legislature knew, or must be presumed to have known, that the act of 1887 had been passed and was codified in Hill's as well as in Bellinger & Cotton's Codes and that the owners of stock were clothed with a right of action against the owner of an unfenced railroad track. While it is not necessary to determine whether the act of 1909, if it stood alone, would enable the owner to recover damages for stock killed or injured upon an unfenced railroad, it is nevertheless significant that no mention is made in the act of 1909 of the right of an individual to sue for stock killed or injured; and it is apparent that Section 5 of the act of 1909 declaring that "the provisions of this act are cumulative to existing remedies" was inserted in recognition of the existing remedies including the remedy which the act of 1887 offered to the owner of stock killed or injured upon an unfenced track.

The act of 1911 (Laws of 1911, Chapter 150) contains evidence that the lawmakers, who authorized the Railroad Commission to suspend the operation of the act of 1909, proceeded upon the assumption that the act of 1887 was still in force and did not intend that the amendment of 1911 should be permitted to interfere with the act of 1887. When the act of 1911 was passed both the statute of 1887 and the one of 1909 appeared in separate Sections of Lord's Oregon Laws. The legislature selected Section 6979, L. O. L., being Section 1 of the act of 1909, and amended it and no

other section; and when making the amendment the lawmakers clothed the Railroad Commission with authority to suspend *"this section."*

Although the act of 1887 did not in terms speak of exceptions it was judicially determined that the statute did not apply to depot grounds nor to public road crossings nor to streets of cities or villages: *Moses* v. *Southern Pac. R. Co.,* 18 Or. 385, 389 (8 L. R. A. 135, 23 Pac. 498). The act of 1909 in terms excepted depot grounds, public road crossings, cities and incorporated towns and villages laid out in lots and blocks, and federal forest reserves. In its brief and in the oral argument the defendant relied much upon the circumstance that the act of 1909 covered the same exceptions that had been judicially inserted in the act of 1887; but the whole argument of the defendant concerning this branch of the case is based upon the contention that Section 6979, L. O. L., embraces the entire statutory and case law of the state and is the sole declaration of the duty imposed upon the defendant. The only question for decision is whether Section 6979 is the sole declaration of duty imposed upon owners and operators of railroads. If this section is the only statute in force then an order suspending it necessarily suspends the only law requiring tracks to be fenced. But it is plain that both the act of 1887 and that of 1909 as amended in 1911 and in 1913 (Laws of 1913, Chapter 229) can be harmonized and can stand together without either conflicting with the other; and although both make it the duty of owners and operators of railroads to fence their tracks yet each is for a different purpose since one was designed for the benefit of the individual while the other was intended for the benefit of the public. The act of 1909 did not repeal the statute of 1887 and therefore the order

made by the Railroad Commission did not relieve the defendant from liability to the plaintiff for stock killed or injured upon the unfenced track. The order of the Railroad Commission suspended the public right mentioned in the act of 1909 but it did not affect the private right provided for in the act of 1887. The judgment appealed from is affirmed. ,        Affirmed.

McBride, C. J., Bean and Johns, JJ., concur.