Submitted on briefs June 7; affirmed September 14, 1932

COLUMBIA RIVER-LONGVIEW BRIDGE CO. *v.*
WELLINGTON ET AL.

(13 P. (2d) 1075)

*Fred Herman,* of Rainier, *A. W. Norblad,* of Astoria, and *Warren H. Lewis,* of Seattle, Washington, for appellant.

*John L. Foote,* District Attorney, of St. Helens, for respondent.

ROSSMAN, J. The issue for determination is whether a taxpayer, dissatisfied with a ruling of a board of equalization, may appeal directly into the circuit court or whether our laws require him first to appeal to the State Tax Commission.

Section 69-309, Oregon Code 1930, which, apart from some amendments irrelevant to our present problem, was section 8, chapter 266, of 1907 Session Laws, provides that ''Any person who shall have petitioned for the reduction of a particular assessment, or whose assessment has been increased by the board of equalization, who shall be aggrieved by the action of such board, may appeal therefrom to the circuit court of the county. * * *'' Section 69-506, Oregon Code 1930, which was section 6, chapter 465, of 1929 Session Laws, provides: ''Any taxpayer or taxing unit may appeal to the tax commission by filing with the county clerk a notice of appeal in duplicate, within ten days after the action of any county board of equalization. * * *''

The State Tax Commission consists of three members (§ 69-402, Oregon Code 1930) and our laws (§ 69-401) provide that ''each commissioner shall be skilled and expert in matters of taxation and shall devote his entire time to the performance of the duties'' of his office.

It will be observed that § 69-309, the principal features of which became a part of our laws in 1907, grants to a property owner, aggrieved by a ruling of a board of equalization, the privilege of an appeal to the circuit court, while § 69-506 provides that he ''may appeal to

the tax commission." The 1929 act contains no words of repeal. The problem, therefore, occurs whether the two acts create concurrent remedies or whether the provisions of the later one are repugnant to those of the earlier and, therefore, exact a conclusion that the later repeals the earlier. The 1929 Session Laws, chapter 465, impose new duties upon the tax commission and greatly amplify the authority already possessed by that body. Sections 1 and 2 of that act are so lengthy that we shall not quote them, but believe that their contents can be fairly indicated by the statement that they confer power upon the tax commission comparable to that of a county assessor. The statute divests the latter official of none of his authority, but superior power is conferred upon the commission apparently for the purpose of enabling it to remedy any neglect of duty of the local official. Section 3 provides:

"The tax commission shall have the power to direct and to order any county board of equalization to raise or lower the valuation of any taxable property and to add property to the assessment list. The tax commission may require any such board of equalization to reconvene after its adjournment for the purpose of performing any order or requirement made by the tax commission and may make such orders as it shall determine to be just and necessary. If such board of equalization shall fail or refuse to comply with any order or requirement of the tax commission, the tax commission shall have power to make such correction or change in the assessment list, and such corrections and changes shall be a part of the record of the proceedings of the said board of equalization; provided, that in all cases where the tax commission shall raise the valuation of any property or add property to the assessment list it shall give notice for the same time and in the same manner as is now required in like cases of county boards of equalization."

Section 4 directs the commission to study and report upon the tax problem. Section 5 concerns itself with the powers of county assessors. Section 6 provides:

"Any taxpayer or taxing unit may appeal to the tax commission by filing with the county clerk a notice of appeal in duplicate, within 10 days after the action of any county board of equalization, which notice shall specify the actions complained of, and said clerk shall forthwith transmit one of said notices to the tax commission. The tax commission shall require the board appealed from to certify the minutes of its proceedings resulting in such action and all evidence taken in connection therewith, and may receive further evidence, and shall make such order as in its judgment is just and proper."

Section 7 provides:

"Any taxpayer feeling aggrieved by any order of the tax commission shall have a right of appeal to the circuit court of the county in which any property affected is located. Such appeal shall be informal and summary. Notice thereof shall be filed with the clerk of the court to which such appeal is taken, and a copy thereof shall be served by registered mail or personally upon the secretary of the tax commission within twenty (20) days after the decision appealed from, and the appellant shall file an appeal bond in the sum of two hundred dollars ($200), signed by one or more sureties, conditioned that the appellant will pay all taxable costs in the event of the affirmance of the decision appealed from. * * * Any of the said parties, or the state tax commission, may appeal from the decision of the circuit court to the supreme court in the same manner as appeals are taken in suits in equity. * * *"

Section 8 provides the manner in which orders of the commission shall be enforced. Section 9 renders penal the offense of withholding from the commission

information which the act exacts. Section 10 prescribes a penalty for the offense of wilfully supplying to the commission false information.

■ It will be seen from the foregoing that supreme authority for the assessment of taxable wealth in this state is lodged in the tax commission, and that it is the duty of that board to bring about state-wide equality so far as possible. The legislation which conferred this authority was evidently prompted by a conviction that equality of assessment and a just distribution of the burden of taxation could not be achieved unless control over assessments was lodged in one central office where there reposed also sufficient power to bring about the desired result. Such being the nature of the 1929 act, we now face the issue whether section 6 of that act which provides that "any taxpayer may appeal to the tax commission" provides a concurrent remedy or repeals section 69-309.

■ Regardless of the reluctance of courts to hold that a statute has been repealed by a later act which contains no express words of repeal, nevertheless, the paramount function of statutory construction is to grant effect to the legislative purpose, and the theory upon which the doctrine of repeal by implication is founded is that the last expression of the legislative will controls. Therefore, if the enforcement of some prior statute would thwart the purpose of a later one, the courts will hold that the later repeals the earlier, even though unaccompanied by any express words of repeal. The real problem, therefore, is none other than one of statutory construction. Both acts provide for an appeal from orders of the county board of equalization but prescribe different methods, and of these differences we will now take note. We have already noticed that the 1907 statute allows an appeal to the

circuit court while the 1929 act directs that the appeal should be taken to the tax commission. The earlier statute allows only the taxpayer to prosecute the appeal while the later one confers the privilege upon any "taxing unit" in addition to the taxpayer. The earlier statute directs that the appeal must be taken within five days "from the time the assessment roll is returned to the county assessor by the board of equalization" while the later one permits the appeal to be taken "within ten days after the action of any county board of equalization." The earlier statute does not exact any undertaking from an appellant to assure the payment of costs, but the later act, in providing for an appeal from an order of the tax commission to the circuit court, demands that the taxpayer shall file an appeal bond in the sum of $200. Section 69-309 provides: "Either party may appeal to the supreme court from such official order or judgment of the circuit court" while section 69-507 provides: "Any of said parties or the State Tax Commission may appeal from the decision of the circuit court to the supreme court." In addition to the above differences, evident upon a cursory comparison of the two statutes, there are others which readily come to mind. Since the members of the tax commission need not be members of the bar, one can readily believe that they would dispose of an appeal with less formality than a circuit court judge. Before the latter attorneys would in all likelihood represent the parties, whereas they might be absent in a hearing before the tax commission. Likewise a board of three commissioners whose principal qualification consists of expert knowledge of tax matters and who confine their daily duties to consideration of tax problems might assess a piece of property for tax purposes in an amount substantially different from

that of a circuit judge whose primary qualification consists of his legal training and whose duties compel him to scatter his efforts among a variety of problems. Under the old statute the equalization board possessed supreme power, subject only to review upon appeal, but under the new one the equalization board is bound to respect the superior authority of the tax commission. Further, the old assessment statutes were content with equality of taxation throughout the county, but the 1929 statutes stress the importance of state-wide equality.

■ The two acts deal with the same subject matter, that is, appeals from the findings of equalization boards. It seems evident that the objects of the two acts are precisely the same, and that the new one was enacted to serve the same purpose as the old one. It is difficult to believe that the two acts were intended to afford concurrent remedies. To adopt such a conclusion would necessitate a belief that the legislature intended to present to the taxpayer his choice of two chances to escape from the findings of the equalization boards. The new act was apparently intended to substitute a trial before three tax experts for trial before a circuit judge whenever a dissatisfied taxpayer appealed from an order of the tax commission. We are of the opinion that the 1929 act is repugnant to the earlier statute and that it was intended as a substitute for it.

We do not believe that we need review once more the many decisions of the courts which state and define the rules governing the problem of implied repeal. Comprehensive reviews of many of the decisions, especially those of this court, are set forth in *State ex rel. Harth v. Phipps,* 136 Or. 454 (299 P. 1009) ; *Miller v. School District No. 1, Multnomah County,* 106 Or.

108 (211 P. 174); and *Swensen v. Southern Pacific Co.,*
89 Or. 275 (174 P. 158). The rules which we believe are
applicable to our problem we shall state by quoting
from earlier decisions:

"It may be stated as a general rule that repeals by
implication are not favored; and a subsequent affirma-
tive statute does not repeal a prior one unless there is
a conflict between the two which is direct and irrecon-
cilable. But where such conflict does exist, and the
two statutes can not be reconciled under the rules of
statutory construction, the subsequent statute, being
the later expression of the legislature on the subject,
must be considered in force, and to operate as a repeal
by implication of all prior acts or parts of acts in
conflict therewith."

From *Swensen v. Southern Pacific Company,* supra,
we quote:

"A repeal by implication is effected if there be such
positive repugnancy between the new and the old en-
actments that they can not stand together or be har-
monized; but the courts will, however, if possible con-
strue the two statutes together and adopt any reason-
able construction which will sustain both of them.
* * * If the new statute revises the subject-matter
of the old and is plainly intended as a substitute it will
operate as a repeal of the old statute; * * * If the
objects of both statutes are not the same, the two
statutes will be permitted to stand although they may
refer to the same subject. * * *"

From *District of Columbia v. Hutton,* 143 U. S. 18,
(12 S. Ct. 369, 36 L. Ed. 60), we quote:

"It is true that there are no express words of re-
peal in the Act of 1878 applied to said § 354 but the
whole tenor of the Act shows that it was intended to
supersede previous laws relating to the same subject-
matter; * * * We are not unmindful of the rule
that repeals by implication are not favored. But there
is another rule of construction equally sound and well-

settled which we think applies to this case. Stated in the language of this court in United States v. Tynen, 78 U. S. 11 Wal. 88, 92 [20 L. Ed. 153, 154], it is this: 'When there are two acts on the same subject, the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act.' "

The 1929 act revises the entire subject matter of the earlier act and substitutes new provisions and new methods in place of those of the 1907 act. It seems evident that it would be impracticable to give effect to the two acts. They are repugnant to one another. It is accordingly our conclusion that the 1929 act repeals the provisions of section 69-309, Oregon Code 1930.

It follows from the foregoing that the decree of the circuit court is affirmed.

BEAN, C. J., BROWN, RAND, BELT, CAMPBELL and KELLY, JJ., concur.