# HANSON BROS. LOGGING CO. *v.* STATE TAX COMMISSION

Preston C. Hiefield, Jr., Portland, argued the cause for plaintiff. On the brief were Jones & Brown and Preston C. Hiefield, Jr., Portland.

Gerald F. Bartz, Assistant Attorney General, Salem, argued the cause and submitted a brief for defendant.

Decision for defendant rendered December 10, 1962.

PETER M. GUNNAR, Judge.

This is a cause brought in this court as an agreed case under ORS ch 27 and rule 27 of this court. By filing herein their agreed statement of facts, the parties have submitted the cause without action or suit for interpretation by this court of the applicable law.

The agreed facts are as follows: The plaintiffs are five married couples named Hanson, residing at Florence, in Lane County. The five husbands, who apparently are brothers, are partners engaged in the logging

business under the firm name of Hanson Bros. Logging Company. For the partnership fiscal year of October 1, 1954 through September 30, 1955, the partnership duly filed its accrual basis, state, partnership, income tax return. For the calendar year 1955, the respective married couples duly filed their respective, cash basis, joint, state, personal, income tax returns and paid the tax thereon.

In the language of the agreed fact statement the controversy and the question before this court are stated succinctly as follows:

The partnership return for fiscal 1955 "disclosed thereon certain sales of timber and other property resulting in a reported gain of $26,946.22. This reported gain represented only that portion of the sales proceeds received which constituted gain on said sales under the installment method of reporting the gain from the sale of such assets. This method of reporting the partnership income for the fiscal year ended September 30, 1955, was followed by the partnership with respect to all proceeds received as a result of said sales occurring in the fiscal year ended September 30, 1955. On a balance sheet of the said partnership at September 30, 1955, as reflected on its said return for the year ending on said date, an asset account designated as an accounts receivable of $49,-844.50 was set forth, and a liability account designated as "Deferred Income" of $49,844.50 was set forth. In each of the succeeding years, the partnership reported the gain arising from sales proceeds received during said years based upon sales made during its fiscal year ended September 30, 1955. Each of the partners in said partnership reported their pro-rata share of said reported gain in their respective State of Oregon individual income tax returns.

"The State Tax Commission determined in its opinion and order No. I–62–18, dated July 27, 1962, attached hereto, that plaintiffs did not make an election within the minimum requirements set forth in ORS 316.190 to report the sales made in the fiscal year ended September 30, 1955, by Hanson Bros. Logging Company on an installment basis, and therefor sustained a net deficiency of tax and interest through January 10, 1962, for plaintiffs, based upon a taxing of the entire gain on the sales occurring in the fiscal year ended September 30, 1955, and the deficiency in tax based thereon, with an off-setting credit for taxes paid upon a reporting of sales proceeds on the installment basis in succeeding years, as follows:

| | |
|---|---|
| Norman I. Hanson and Velma Hanson | $1,132.18 |
| Merle W. Hanson and Ina Hanson | 1,069.23 |
| Harvey Hanson and Rita Hanson | 1,008.02 |
| Everett Hanson and Geneva Hanson | 1,063.80 |
| Clifford Hanson and Olga Hanson | 874.37 |

## QUESTION IN CONTROVERSY

"The question for decision by the court is whether or not Hanson Bros. Logging Company made an election under the provisions of ORS 316.190 and the regulations thereto to report sales of property in the fiscal year ending September 30, 1955, on the installment basis.

"If the Court finds that such an election was so made, the parties agree that no additional Oregon income tax is due from plaintiffs, or any of them, for the year 1955. If the Court finds that such an election was not made, then the parties agree that the amount of the asserted deficiency set forth above for plaintiffs is correct."

Also submitted by the plaintiffs to this court with the defendant's concurrence at the time of oral argument was the original partnership return in question, the audit report (the defendant's form 114–P (Rev. 4–59)), and a copy of the handwritten report of the auditor. On the first page of this return is reported:

"Profit or Loss from Sale of Real
Estates, Stock, Bonds, etc. (From
Schedule B)                          $26,946.22"

As indicated in the agreed statement, the balance sheet on page two of the return showed "3. Accounts Receivable" of $49,844.50, up from $6,020.11 at the beginning of the income period, and a liability described on the return as "14. Other liabilities. Describe:—Defered (sic) Income" of $49,844.50, up from zero at the beginning of the income period. As to the particular asset in issue, being timberland described on the return as the "Thayer Property," the return in Schedule B reported this sale as follows:

| 1. Kind of Property | 2. Date Acquired | Sold | 3. Gross Sales Price |
|---|---|---|---|
| Thayer Property | 10/49 | 5/55 | $20,000.00 |

| 4. Depreciation Allowable since Acquisition | 5. Cost | 6. Value as of January 1, 1930 |
|---|---|---|
| | $709.14 | |

| 7. Subsequent Improvements | 8. Net Profit or Loss |
|---|---|
| $126.50 | $19,164.36 |

Two other sales are reported in Schedule B, one described as "Timber" in the amount of $11,143.92 and the other described as "Western Donkey" for $1,200.00. Whether these were installment sales is not disclosed. They are not the subject of the audit report and a quick computation discloses that they are not the basis of the deficiency assessment.

Other than stated above, no reference to the Thayer property sale, either manifest or hidden, is made in the return.

■ The commission concedes that, if the sale is properly reported on the partnership return, further election and manifestation need not be set forth in the joint returns of the plaintiffs. This conforms to the commission's position announced in its Law Department Abstracts, OF 1470; 8–13–57, in which it said:

"* * * Where the election is shown on a partnership return and the individual return of the partner incorporates the partnership return by a reference sufficiently clear to insure that the returns will be brought together, the statutory requirement may be deemed to have been met."

This position is sound under the Oregon statute.

No question is raised as to the installment nature of the Thayer property sale or as to its qualification for installment reporting under ORS 316.190(1). The only issue is as to compliance with the election requirements of ORS 316.190(2). That subsection of the statute in 1955, as it does today, read as follows:

"ORS 316.190. * * * (2) If the transaction is reported by the taxpayer as resulting in a gain, an election to report a casual sale or other casual disposition of real or personal property on the instalment basis must be *clearly manifested* in the

*first return* of the taxpayer made *for the tax year in which the sale or other disposition was made* or, if no payments are received in that year, in the first year in which payments are received. If such manifestation is not so made, or if the sale or disposition is omitted from the return, or if the transaction is erroneously and in bad faith reported as resulting in a loss, the entire gain, as determined by ORS 316.260, shall be included in income for the tax year in which the sale or disposition was made; however, if no initial payment is received in the year of sale or other disposition, the entire gain shall be included in the taxable year in which the initial payment is made. * * *" [Emphasis supplied]

■ This is a case of first impression among the reported decisions in Oregon. Unfortunately, the federal law and federal cases are of little help because IRC § 453 requires no election and until 1958 the regulations of the commissioner contained no such requirement. A number of federal cases have been cited to this court by the plaintiffs, including *Pacific National Co. v. Welch,* 304 US 191, 58 S Ct 857, 20 AFTR 1248 (1938); *Jack Farber,* 36 TC No. 116 (1961); *John F. Bayley,* 35 TC 288 (1960); *Scales v. Commissioner,* 211 F2d 133, 45 AFTR 452 (6th Cir 1954); *Joseph Hornberger Jr. v. Commissioner,* 289 F2d 602, 7 AFTR2d 1418 (5th Cir 1961); *Nunn v. Gray,* 196 F Supp 305, 8 AFTR2d 5283 (DC Ky 1961), and *W. T. Thrift,* 15 TC 366 (1950). But as the court noted in the *Hornberger* case, *supra* (7 AFTR2d at 1420), the federal courts dealing with the federal statute

"* * * are not dealing with a statute which in express terms requires an *election* by the taxpayer at a certain time or in a certain manner, or that in fact even mentions an 'election' at all. * * *"

The courts goes on to point out (at page 1421):

> "It may appropriately be observed that whenever Congress has intended to provide for an 'election' of treatment for tax purposes it has had no difficulty in expressing such intent. In many cases Congress has enacted separate sections dealing with the time and manner of making such election. * * *"

On the other hand, ORS 316.190(2) specifically requires an election which is clearly manifested on the first return and goes on it its second sentence to negate specifically some of the above-cited federal decisions as a basis for avoiding such election. Thus, we are dealing with an entirely different breed of cat in ORS 316.190(2) than the federal courts had in 1939 IRC § 44(b) and 1954 IRC § 453 and those decisions are of little help, unless one were to strain an imputation from the *Hornberger* decision quoted above that the contrary result would obtain where such election is required.

The only published interpretation of the Oregon statute is that of the commission in its regulations. Reg. 6.190(2) reads:

> "Reg. 6.190(2). Notice of Election to Report on Instalment Basis. The clearest manifestation of the election to report a casual sale on the instalment basis requires a showing of the taxpayer's basis in the property and the adjustments thereto, the total sales price, the gain on the sale, the percentage of the total sales price attributable to gain, the total amount received in the tax year and an application of the percentage to such amount to show the gain reportable. *No matter what may be the intent of the taxpayer, no election to report on the instalment basis can be honored without sufficient data in the return for the year in which the first payment is received on account of the sale which would*

*put the commission on notice of intent to claim such election.* Affirmative action, through the medium of the first return, filed for the tax year in which the initial payment is recevied, is required of the taxpayer claiming the benefits of this section." [Emphasis supplied]

Except for the emphasized part of this regulation, it is neither accurate nor helpful.

The first sentence of the regulation purports to set forth not a form of an election which is "clearly manifested" as required by the statute but rather a superlative manifestation, the "clearest manifestation." While this regulatory language may be of assistance in the administration of the act, it makes the error noted in the *Hornberger* decision, *supra,* of failing to distinguish between a manifestation of an election and a disclosure of the pertinent facts of the sale. As Chief Judge Tuttle said in the *Hornberger* decision (7 AFTR 2d at 1421):

"It is to be noted that the disclosure of all the facts by the taxpayer has no bearing on the making of an *election.*

"* * *.

"The fact that the Tax Court decided differently in the Bayley case than here because the facts were disclosed in the return evidences a concept that the failure to give the facts touching on the sale (even though an excusable omission, as here conceded) somehow should be penalized. We do not think the law recognizes this concept. * * *"

■ It appears to this court that, contrary to the regulation, the "clearest manifestation" of the required election would be a statement that "I hereby elect to treat the Thayer Property sale as an installment sale under ORS 316.190," or words of similar import. This,

and nothing more, while it might violate some other statutory design, would most clearly suffice as a manifestation of election.

■ But ORS 316.190 does not require the superlative. It merely requires that the election be "clearly manifested." Whether an election is "clearly manifested" as to any particular sale depends on the facts of the case.

■ What is a clear manifestation depends first upon the person to whom the manifestation is to be made. The commission in the emphasized part of its regulation has assumed that the manifestation must be clear to the commission. In this they are completely correct. The commission are not laymen ignorant of tax law and accounting. On the contrary, our Supreme Court has long recognized them as having expert knowledge of taxation and as dealing daily in the complex problems of this field. *Columbia River-Longview Bridge Co. v. Wellington,* 140 Or 413, 418, 13 P2d 1075 (1932). Even without the persuasive force of that opinion, this court would have arrived at the same conclusion out of deep conviction.

But in the nature of our tax administration the manifestation can be deemed to be made to an even more narrowly circumscribed audience than the commission itself. This audience is that of the income tax audit staff of the commission. This staff is composed of people trained in accounting and by training or experience or both particularly in tax accounting, as well as being fully conversant with the normal usages of the English language. To this select group of experts the tax return speaks. To them the election must be "clearly manifested."

■ As discussed above, what must be "clearly manifested" is the taxpayer's election. Whether he is en-

titled to elect such installment treatment and, having so elected, whether he has correctly computed his tax are questions which do not add or detract from the validity of his manifestation of his election—though certainly some of the data set forth in the return may serve a dual purpose.

■ The next and final question is how the election can be manifested clearly. Certainly, there are many methods. Since the manifestation is addressed to an auditor, it could be done either in words, or in figures, or in a combination of words and figures. By requiring that the manifestation be clear, the statute is not satisfied with a minimum manifestation. Without quoting a lengthy definition from a dictionary, the word "clear" is defined as meaning in this context "easily understood: without obscurity or ambiguity" or "easily visible or distinguishable" or "having no doubt, uncertainty or confusion of mind." See Webster's Third New International Dictionary, Springfield, Mass., 1961, pp. 419–20. Thus, an ambiguous or uncertain manifestation would be insufficient.

■ To be clearly manifested, the election must be shown on the return by words or figures or both in such manner that no interpretation reasonably can be made other than that an election has been made. This does not mean that no other interpretation is possible but rather that no other interpretation is reasonably probable. This coincides with the commission regulation when it requires that the information be sufficient to put the commission on notice of the taxpayer's intent so to elect. If a contrary intent is reasonably discernable from the return, then the election has not been clearly manifested.

Turning then to the return in this case, counsel for

the taxpayer contends that the return contains all the necessary information to meet the minimum requirements of "clearly manifested." As already noted, this question is one of first impression among the reported decisions in Oregon. However, counsel for the commission has kindly cited to this court the circuit court case of *James G. and Jemima Towne v. S. W. Horne et al,* Marion County Circuit Court No. 4933, in which the same issue was raised, in which this judge was taxpayers' counsel, and which the taxpayers lost. Commission counsel contends that the *Towne* case was a stronger case for the taxpayer and taxpayer's counsel contends to the contrary. This court has no intention of rearguing that case or of criticizing its result in any way. However, two points should be made about it. In the *Towne* case, the taxpayers contended that accounting data alone constitutes a clear manifestation of an election only if such data permits of no other reasonable interpretation by an accounting expert and, to prove their contention both before the commission (whose decision was a split one—two to one) and the court, they offered the expert testimony of a CPA that no other interpretation was reasonable for an accounting expert.

In the instant case, no expert testimony was offered or is available to this court. While this court is a specialized court and is as conversant as a tax lawyer with accounting, its professional and statutory qualifications are as to tax law, not tax accounting or accounting in any of its phases. Furthermore, even if the judge of this court were a CPA as well as a lawyer, and even if he, as a CPA, thought that, as a matter of accounting theory, such interpretation could be made, this court doubts that, without some expert evidence, it would be entitled to make such nonlegal deter-

mination because there would be nothing in the record other than the bare return to support its conclusion.

█ In the state of this present record, this court must find that the return is easily understood to declare the election as a matter of law, before it can rule for the plaintiffs. Nowhere on the return are the words "installment" or "election" or any words of similar import. The words "deferred income" and the words "accounts receivable" do not necessarily import an election, either separately or in conjunction with each other. Nothing on Schedule B imports an election. Unlike the *Towne* case, there is nothing on this return which in any way is inconsistent with a sale of the Thayer property for $20,000 with a cost of $735.64, resulting in income of $19,164.36. This is what Schedule B shows. Though the auditor might have wondered at deferred income of $49,844.50, there was nothing to tie this item to the Thayer property sale.

█ Thus, an expert auditor could, and probably did, receive this return and could, and probably did, reasonably conclude that the Thayer property sale was a completed transaction in 1955. The burden was upon the plaintiffs to show that such an auditor should have reasonably concluded that the Thayer property sale must have been an installment sale and that it was being reported on the installment method. Having failed to do so, the relief that the plaintiffs seek must be denied.

A decree will be prepared under rule 31, finding that plaintiffs did not clearly manifest any election to treat the Thayer property sale as an installment sale, sustaining the commission opinion and order No. I-62-18, and allowing costs and disbursements to the defendant herein.