---

Submitted on briefs September 25, 1928, affirmed February 26, rehearing denied May 28, 1929.

IN THE MATTER OF THE ESTATE OF JEROME L. BRIZ-ZOLARI, DECEASED.

MARIE L. BRIZZOLARI, EXECUTRIX, ET AL., *v.* CORA BRIZZOLARI ET AL.

(275 Pac. 17.)

For appellant there was a brief over the names of *Mr. C. M. Idleman* and *Mr. McDannell Brown.*

For respondent, Marie Brizzolari, executrix, there was a brief over the name of *Mr. M. B. Meacham.*

For respondents Andrew Brizzolari and Jerome Brizzolari, there was a brief over the name of *Mr. James F. Alexander. Mr. John W. Kaste, amicus curiae.*

RAND, J.—On December 31, 1926, Jerome L. Brizzolari died testate at Portland, Oregon, leaving a small tract of land one hundred feet in length and seventy-five feet in width in the City of Portland, which, up to the time of his death, he had occupied as his home and which under Section 221, Or. L. et seq., constituted a homestead. On July 30, 1927, on petition of his widow duly filed in the department of probate of the Circuit Court for Multnomah County the Honorable ROBERT G. MORROW, the then presiding

judge of said Circuit Court, made an order setting aside said tract of land as the separate property of the widow. The department of probate is one of the departments of the Circuit Court for Multnomah County and the Honorable GEORGE TAZWELL is the circuit judge who sits in said department pursuant to the directions of Section 3133, Or. L. At the time the order was made he was temporarily absent from the city. Upon his return and his attention being called to the matter, on October 29, 1927, he made an order vacating and setting aside the order previously made by Judge MORROW. From this last-mentioned order the widow has appealed, contending that both Judge MORROW and Judge TAZWELL had equal authority and jurisdiction over the subject matter of the petition and that, therefore, Judge TAZWELL had no power or authority to make an order setting aside the former order and also contending that the making of such order was authorized by law.

Respondent contends that under the doctrine announced in *Leet* v. *Barr*, 104 Or. 32 (202 Pac. 414, 206 Pac. 548), no court had at the time the order was made any authority or jurisdiction to make an order setting apart to the widow a homestead in a case where the owner had died subsequent to the enactment of Chapter 112, Laws of 1919, and, therefore, that the order made by Judge MORROW was null and void and of no effect and, being a mere nullity, it could be set aside by the judge making it or by any other judge of that court either on his own motion or otherwise.

There was no contention made that, in the absence of the judge who sits in the department of probate, the other circuit judges of Multnomah County are not authorized to transact the business of that department and we shall assume that there is no such

lack of power or authority upon the part of the other circuit judges of that county under such circumstances.

■ The appellant contends that, where an order is made in a suit or proceeding within the jurisdiction of the court making it and in the exercise of his judicial discretion, another judge of the same court or one having equal or co-ordinate jurisdiction or authority is wholly unauthorized on the same record to vacate or set aside the order because of his opinion that the order was mistakenly or improvidently made, and says that the observance of this rule is essential to the prevention of unseemly conflicts between judges having equal authority upon questions of law which would arise if the decision of one judge be open to review by another judge of the same court in the same case. She cites in support thereof the following cases: *Cole Silver Min. Co.* v. *Virginia & Gold Hill Water Co.*, 6 Fed. Cas. 72, No. 2990; *Appleton* v. *Smith*, 1 Fed. Cas. 1075, No. 498; *Plattner Implement Co.* v. *International Harvester Co.*, 133 Fed. 376 (66 C. C. A. 438); *Hardy* v. *North Butte Mining Co.*, 22 Fed. (2d) 62. The rule contended for is undoubtedly the rule followed in the federal courts. We think it has no application in this case. We do not see any reason why a Circuit Court should not correct any of its errors up to the time of the entry of final judgment in the cause. In this court the court may correct its former opinion on rehearing and make its decision conform to law. The same rule ought to be applicable in the Circuit Courts: See *Portland Trust Co.* v. *Coulter*, 23 Or. 131 (31 Pac. 282). Mr. Freeman says it is a universally recognized rule. that a judgment which is absolutely void may be vacated by the court in which it was rendered: 1 Freeman

on Judgments (5 ed.), § 226. In *White* v. *Ladd,* 41 Or. 324 (68 Pac. 739, 93 Am. St. Rep. 732), Mr. Justice WOLVERTON, speaking for the court, said:

"A judgment void upon its face may be set aside or vacated at any stage of the proceedings, or at any time, whether within the term at which it was rendered or afterwards, when the attention of the court in which it was rendered is attracted to it. * * This power is inherent with the court, and will be exercised, even at its own suggestion, for the preservation of its dignity, the protection of its officers, and to arrest further action, which can serve no lawful purpose, and the most effectual method is by extirpation of the judgment itself as superfluous and vexatious."

Again, in *Huffman* v. *Huffman,* 47 Or. 610 (86 Pac. 593, 114 Am. St. Rep. 943), Mr. Justice MOORE said:

" * * Though jurisdiction of valid judgments and decrees ceases with the close of the term at which they are given, unless authority over them is retained by motion or other appropriate proceeding * * superior courts possess ample power at all times to vacate void judgments, decrees and orders, and it is incumbent upon them to purge their records of the entries of such nullities when their attention is called thereto."

■ Hence, the only question for our decision is whether the order made by Judge MORROW, setting the homestead apart to the widow, is void upon its face, for if so it was the duty of Judge TAZWELL to vacate the order either on his own motion or otherwise whenever his attention was called thereto and regardless of whether it was within the term at which it was rendered or at a subsequent term of that court. In *Leet* v. *Barr, supra,* it was unanimously held by this court that after the enactment of Chapter 112, Laws of 1919, which comprises Sections 221–226, Or.

L., a homestead may be devised by its owner, subject only to the dower right of his widow, or, if not devised or disposed of in his lifetime it will descend to his heirs subject only to such dower right. This resulted from the express directions contained in Sections 225 and 226, Or. L.

It is conceded that at the time of testator's death, at which time the rights of the devisees under the will attached, the law in respect to the questions involved here had not been changed by any statutory enactment after the decision in *Leet* v. *Barr,* except as will now be noted.

At the time that decision was made Section 1234, Or. L., provided as follows:

"Upon the filing of the inventory the court or judge thereof shall make an order setting apart for the husband, widow or minor children of the deceased, if any, all the property of the estate by law exempt from execution. The property thus set apart is the property of such husband or widow to be used or expended by him or her in the maintenance of himself or herself and minor children, if any; or if there be no husband or widow it is the property of the minor child; or if more than one child, then of the minor children in equal shares, to be used or expended in the nurture and education of such child or children by the guardian thereof, as the law directs."

That section was amended by Chapter 263, Laws of 1923, by adding without any change to what has been already quoted the following provision:

"And that all orders heretofore made and entered of any court or judge thereof setting apart to any husband, widow or minor children of the deceased, any homestead under and by virtue of the provisions of section 1234, Oregon Laws, be and the same are

hereby ratified, confirmed, validated and legalized in so far as such orders might or could have been lawfully made under the provisions of section 1234, Oregon Laws, the same being chapter 37 of General Laws of Oregon, 1919.''

In *Home Telephone Co.* v. *Moodie*, 75 Or. 117 (145 Pac. 635), this court, speaking through Mr. Justice BURNETT, quoted with approval the following excerpt from *City of Birmingham* v. *Southern Express Co.*, 164 Ala. 529 (51 South. 159), as follows:

''Special provisions relating to specific subjects control general provisions relating to general subjects. The things specially treated will be considered as exceptions to the general provisions. When a specific subject has been specially provided for by law, it will not be considered as repealed by a subsequent law which deals with a general subject in a general way, though the specific subject and the special provisions may be included in the general subject and general provisions.''

In *Rodgers* v. *United States*, 185 U. S. 83 (46 L. Ed. 816, 22 Sup. Ct. Rep. 582), Mr. Justice BREWER, speaking for the court said:

''It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that the one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special.''

In that case the court quoted with approval the following:

"The general principle to be applied, said BOVILL, C. J., in *Thorpe* v. *Adams*, (L. R. 6 C. P. 135) to the construction of acts of Parliament is that a general act is not to be construed to repeal a previous particular act, unless there is some express reference to the previous legislation on the subject, or unless there is a necessary inconsistency in the two acts standing together."

Holding to the same effect, see *Barnes* v. *Massachusetts Bonding Co.*, 89 Or. 141 (172 Pac. 95); *Washington* v. *Miller*, 235 U. S. 422 (59 L. Ed. 295, 35 Sup. Ct. Rep. 119); 25 R. C. L., p. 927; 1 Lewis' Suth. Stat. Const. (2 ed.), §§ 274 and 275: Black on Interpretation of Laws, p. 116.

The mere reading of the amendatory clause which was added to Section 1234, Or. L., discloses that the amendatory provision was wholly retrospective in effect and could not have been intended to affect any case where the homestead owner died subsequent to the amendment. Hence, this amendment did not have any effect whatever upon the law as announced in *Leet* v. *Barr, supra.* The identical question here was directly passed upon by this court in *Slattery* v. *Newell*, 115 Or. 22 (236 Pac. 268). The opinion in that case was written by Mr. Justice BURNETT, who has since died, and was concurred in by the other three members of the department hearing it. The law is settled by *Leet* v. *Barr, supra,* and *Slattery* v. *Newell, supra,* and the question is no longer an open one. Hence, we have this situation confronting us: Judge MORROW made an order pretending to set aside a homestead as the separate property of the widow and there was no law in existence conferring upon

him any such authority or power. His order, therefore, was null and void and of no effect whatever and was rightfully set aside by Judge TAZWELL.

Reference is made in the briefs to an amendment of Sections 225 and 226, Or. L., by Chapter 345, Laws of 1927, but that amendment was not made until after the death of the testator and, of course, can have no effect upon the rights of the parties which vested at the time of his death. For that reason any discussion of the effect of those amendments is wholly inappropriate and out of place in this case and anything that would now be said as to the effect of the amendments would be mere *dicta.*

For the reasons stated the order appealed from setting aside and vacating the former void order of the Circuit Court for Multnomah County, purporting to set aside the homestead of the testator to his widow, must be affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, ROSSMAN, BELT and BROWN, JJ., concur.

COSHOW, C. J., Dissenting.—I regret that I am unable to agree with my brethren in the decision of the within entitled case. The majority opinion seems to me to ignore an act of the legislature in a matter over which the legislature has supreme control and is likely to produce so much trouble regarding titles that I am constrained to express briefly my reasons for dissenting.

It must be admitted that the legislature has supreme authority in the matter of exemptions. This is especially true with homestead exemptions. Such an exemption was unknown to the common law. 29 C. J. 783, § 3. *Leet* v. *Barr,* 104 Or. 32 (204 Pac. 414,

206 Pac. 548), and *Iltz* v. *Krieger,* 104 Or. 59 (202 Pac. 409, 206 Pac. 550); recognize that the homestead is a matter of legislation. There is no suggestion that the Constitution would be infringed to any degree by holding that the probate courts of the state have jurisdiction to set aside the homestead as exempt to the persons entitled to it as prescribed in Section 1234, Or. L., *Leet* v. *Barr* did hold, however, that there was an irreconcilable conflict between said Sections 225 and 226 and Section 1234 of Or. L. as those sections read in 1922. That case further held that because said Sections 225 and 226 treated particularly of homestead exemptions and said Section 1234 treated of exemptions in general and because said Section 1234 was enacted prior to said Sections 225 and 226, although at the same session of the legislature, said Section 1234 must give way to said Sections 225 and 226. It is now held by the majority opinion that a probate court is without jurisdiction to set aside a homestead as exempt. The effect of that holding is to destroy entirely the homestead exemption after the owner has deceased. The homestead exemption, according to the majority opinion, is a reality only to the owner while living. The moment he passes the land encumbered by the homestead is no longer exempt from execution.

Evidently the legislature did not intend that such should be the construction of the acts of 1919 now constituting the sections above mentioned. For that reason said Section 1234 was amended and a curative sentence attached in 1923. It is said now that this section is solely a curative statute, but the majority opinion in effect holds that Section 1234 does not include homestead exemptions but refers to such property as was exempt prior to the enactment of

the original homestead exemption law in 1893. If that be the case, how is it that the legislature did incorporate in that section a curative statute applicable to homestead exemptions? Why amend a statute by adding a subject not covered by the original section? Respect for the acts of the legislature forbids any such construction. The use of the term "all property exempt from execution" forbids any such construction.

The very purpose of homestead exemption was to preserve a place of abode for the family which could not be taken from them.

"Homestead laws, it has been said, are not founded upon equity, but are enacted as a matter of public policy in the interest of humanity. The preservation of the homestead is considered of more importance than the payment of debts. The object of the provisions is to provide a home for each citizen of the government, where his family may be sheltered and live beyond the reach of financial misfortune, and to inculcate in individuals those feelings of independence which are essential to the maintenance of free institutions. Also, the purpose of the homestead provisions is to protect the family as an entirety, and not the individual who for the time being is the head of the family." 29 C. J. 782, 783, § 2.

I can conceive of no purpose of enacting Section 1234 by the 1923 legislative session except to modify the opinion in *Leet* v. *Barr* wherein that opinion in effect denies the application of said Section 1234 to homestead exemptions. The curative sentence was added so as not to disturb titles already vested by virtue of the opinion in *Leet* v. *Barr*. There is no necessary inconsistency between Sections 225 and 226 and 1234. The very purpose of the act of 1923 amending said Section 1234 was to override the

opinion in *Leet* v. *Barr,* which held there was such inconsistency. I would not overrule *Leet* v. *Barr,* but I am holding that the act of 1923 does overrule so much of that decision as denies to probate courts the authority to set the homestead aside as exempt from execution to the persons named in said Sections 225 and 226.

A court order is not void unless made without jurisdiction. It matters not how erroneous the order may be so long as the court has jurisdiction of the subject matter and of the parties the order is not void. There is no difference of opinion about an order being void which has been made without jurisdiction. If Section 1234 does not authorize a probate court to set aside a homestead as exempt, then the order made by Judge Morrow in the instant case was absolutely void and Judge Tazwell had at any time later authority to set it aside and expunge it from the record.

Section 1234 authorizes probate courts to set aside all exempt property. "All" does not mean simply a part. Chapter 2, Title 3, Or. L., embracing Sections 221 to 226, inclusive, makes a homestead exempt from execution. The ordinary meaning of the word "all" in Section 1234 certainly then includes the homestead exemption. No other provision is made for setting a homestead exemption aside after the owner has deceased, except Section 1234. That Section 1234 covers homestead exemption has been uniformly held from the time of the original homestead law enacted in 1893 until the decision in *Leet* v. *Barr* rendered in 1922. There is a period of 18 years when the courts uniformly and without exception construed Section 1234 as including homesteads.

How, when and where did our courts lose jurisdiction of that subject matter? Said Section 1234 was not modified by the amendment of 1919, except so as to include widowers as a beneficiary of exempt homesteads; consequently there is no reason for the change in construing that section unless it would be required in order to harmonize with some other section of the Code on the same subject matter. But the construction placed on it by the majority opinion instead of harmonizing does just the opposite. The rule that the general must give way to the particular has no application, unless there is an irreconcilable difference; consequently that rule has no application here because there is no irreconcilable difference between Sections 225 and 226 as contrasted with Section 1234. The three sections should be construed together. See writer's opinion in *Overland* v. *Jackson,* 128 Or. 455 (275 Pac. 21). In the instant case the widow was entitled to the benefit of the homestead exemption as long as she abided in that home. The homestead right in that property was similar to her dower right. The advantage in the homestead exemption is that it covered the entire property and was exempt from execution, while her dower would have been only a half interest for life and was not exempt from execution. There is no more inconsistency in holding that the title to a tract of land passes to the devisee by the terms of a will subject to the homestead exemption in favor of the surviving spouse than there would be in holding that the tract of land would pass to the devisee named in a will subject to the curtsey or dower interest of the surviving spouse. The interests are similar.

The majority opinion is fraught with very dangerous results. How many orders have been made

throughout the state by probate courts setting aside homesteads as exempt is not known to us. By the majority opinion all such orders are not merely erroneous but are absolutely void. Old people, as in the instant case, may be residing upon land which they think is exempt from execution and which they think is a place where they may reside in peace and safety during the term of their natural life, but may be surprised as a result of the majority opinion by having the heirs of the decedent dispossess them. Under the majority opinion the order placing such a surviving spouse in possession of the homestead is absolutely void. Such an order would be no defense to an action at law by an heir who owned the land by descent or by will and who sought to recover possession by virtue of the majority opinion. I cannot subscribe to a decision so dangerous. I am not concerned as to whether or not the ruling of Judge MORROW was erroneous or whether or not it was regular. The court had jurisdiction of the subject matter. Judge MORROW was lawfully sitting as judge of that court and his order should and must be respected until it is lawfully set aside by a Superior Court on appeal. The order made by Judge TAZWELL setting aside Judge MORROW's order was not made until several months later and after more than one term of court had expired between the two orders. The order of Judge TAZWELL setting aside the order of Judge MORROW should be reversed and Judge MORROW's order restored to full effect and force.

BEAN, J., concurs in the foregoing opinion reversing the order of Judge TAZWELL, setting aside Judge MORROW's order.—I do not deem the question of the force and effect of the order made by Judge MORROW is necessary to be considered at this time.