Motion to dismiss appeal submitted November 14, denied December 29, 1960; argued September 7, affirmed November 15, 1961

IN THE MATTER OF THE DETERMINATION OF THE RELATIVE RIGHTS TO THE USE OF THE WATERS OF THE TUALATIN RIVER AND ITS TRIBUTARIES.

# APPLETON ET AL *v.* OREGON IRON & STEEL COMPANY

358 P. 2d 260
366 P. 2d 174

Cookingham & Maletis, Portland, for the motion.
Bush & Bradley, Hillsboro, contra.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

PER CURIAM.

The respondent, Oregon Iron & Steel Company, has moved to dismiss appellants' appeal on the ground that the notice of appeal in this matter was not given within the time allowed for appeals, generally, as provided by ORS 19.026(1), hereinafter called the general appeal statute. It reads:

"Except as provided in subsections (2) and (3)

of this section, the notice of appeal shall be served and filed within 30 days after the entry of the judgment appealed from."

Appellants assert that since the merits of the case involve a determination of water rights under chapter 539, ORS, the appeal procedure there specially provided is controlling. Appellants rely specifically on the wording of ORS 539.150(4):

"After final hearing the court shall enter a decree affirming or modifying the order of the State Engineer, and may assess such costs as it may deem just. Appeals may be taken to the Supreme Court from the decrees in the same manner and with the same effect as in other cases in equity, except that the notice of appeal must be served and filed within 60 days from the entry of the decree."

It is admitted that appellants did not serve their notice of appeal until a date after the 30-day limitation established by ORS 19.026, supra, but did serve their notice prior to the 60-day limitation provided by ORS 539.150(4). The sole issue raised by the motion is: which of the foregoing two statutes is controlling?

A study of the history of the two statutes reveals the following:

1. The predecessor to the current general statute on limitation of time to take appeal was originally enacted in 1862. Deady § 527. The time then allowed was one year. In 1864 this time was reduced to 60 days. In 1870 the time was changed to six months. Oregon Laws 1870, § 7, p 31. In 1913 the legislature again limited the time to 60 days (Oregon Laws 1913, ch 319), and so remained until 1959, when by ch 558, § 3, of the laws of that year it was established at 30 days (ORS 19.026(1)).

2. What is now ORS 539.150(4) was part of a

comprehensive code for the determination of water rights initiated prior to February 24, 1909. Oregon Laws 1909, ch 216, § 26. Although that code (ORS, ch 539) was amended or revised in 1913 and 1923 the time limitation of 60 days for appeals was retained intact.

Respondent relies primarily upon the doctrine of implied repeal, asserting that since the general appeal statute provided a limitation of 30 days, it must of necessity repeal the special provision found in the older water code. Stated more exactly, the precise proposition for determination here is whether a subsequent broad statute (ORS 19.026(1)) impliedly repeals the earlier section (ORS 539.150(4)) governing procedure in a water rights case.

■ Statutory repeals by implication are not favored. *Wampler v. Department of State Police*, 224 Or 439, 355 P2d 238, 240; *Noble v. Noble*, 164 Or 538, 549, 103 P2d 293 (1940); *Swensen v. Southern Pac. Co.*, 89 Or 275, 279, 174 P 158 (1918); *State v. Rogers*, 22 Or 348, 30 P 74; 1 Sutherland, Statutory Construction (3d ed), 486, 487, § 2021; Endlich, Interpretation of Statutes, 280, § 210.

In 1 Sutherland, Statutory Construction, supra, at 486, we find the following as a persuasive reason for avoiding when possible repeals of that character. He says:

"* * * An implied repeal of prior statutes will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. * * *"

■ The foregoing is particularly applicable with

reference to repeals affecting procedural statutes, such as we presently consider. 82 CJS 515, Statutes § 298, states the general rule to be:

"A special act providing a special or summary mode of procedure in a particular case is not affected by a subsequent general act relating to procedure, unless there is found in the subsequent act a direct indication of an intent to repeal such special act. * * *"

See, also, 50 Am Jur 565, Statutes § 564.

This court has long been committed to this rule. *Home Telephone Co. v. Moodie*, 75 Or 117, 120, 145 P 635 (1915); *Hill v. Hartzell*, 121 Or 4, 9, 252 P 552; *In re Estate of Brizzolari*, 129 Or 307, 313, 275 P 17; *Webber v. Bailey*, 151 Or 488, 494, 51 P2d 832.

In the Hill, Webber and Brizzolari cases, supra, the court quoted from and applied the rule as expressed by Mr. Justice Brewer in *Rodgers v. United States*, 185 US 83, 46 L ed 816, 22 S Ct 582. We think it so aptly meets the present problem that we again repeat Justice Brewer's words:

"It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general—the terms of the general broad enough to include the matter provided for in the special—the fact that the one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special."

■ There are no express words of repeal in the present general appeal statute. Therefore, a presumption arises that the legislature, in enacting the statute, acted with full knowledge of existing statutes relating to the subject of appeal and intended not to repeal the earlier statute. *Webber v. Bailey,* supra (151 Or at 493) ; 82 CJS, supra, at 487, § 289 ; 1 Sutherland, Statutory Construction, supra, at 486.

We also take notice of another significant fact; that is, when the present general appeal law was amended in 1959, the limiting words "and not otherwise" were stricken from the general appeal statute as it had previously appeared in its predecessor, ORS 19.030. The presence or absence of negative words have often been invoked by courts as an aid in fathoming the legislative intent between conflicting statutes. See *State ex rel Wash.-Ore. Invest. Co. v. Dobson,* 169 Or 546, 552, 130 P2d 939 (1942), where the negative term "no appeal to the circuit court shall be taken" was evaluated in determining the legislative intent. See, also, *Brigham v. City of New York,* 227 NY 575, 124 NE 209; *U. S. v. Gillis,* 95 US 407, 416, 24 L ed 503; *Howard v. Hulbert,* 63 Kan 793, 66 P 1041, 1042; *Allaby v. Mauston Electric Serv. Co.,* 135 Wis 345, 116 NW 4, 5 ; 50 Am Jur, supra, at 565.

■ Unless there is a plain indication of an intent that the general act shall repeal the special act, the special act will continue to have effect, and the general words with which it conflicts will be restrained and modified accordingly, so that the two are to be deemed to stand together; one as the general law of the land, and the other as the law of the particular case or an exception to the general rule. *Streby v. State Ind. Acc. Comm.,* 107 Or 314, 323, 215 P 586 (1923); *Webber v.*

*Bailey*, supra (151 Or at 494) ; *Hill v. Hartzell*, supra (121 Or at 9).

We also find at least two independent statutes providing for a special time of appeal greater than the general appeal statute. The criminal appeal section provides for 60 days (ORS 138.070). The Public Utilities Commission statutes permits 60 days for appeal. ORS 756.610. In *State v. Stone*, 178 Or 268, 273, 166 P2d 980 (1946), it was indicated that the section of the statute pertaining to criminal appeals was complete in itself and that while it might have been desirable to make the provisions of the criminal code similar to those of the civil appeal, "the legislature has not seen fit to do so.".

In conclusion, we find an admonition of Sutherland is pertinent in this matter:

> "Statutes giving the right of appeal are liberally construed in furtherance of justice, and an interpretation which will work a forfeiture of that right is not favored. Thus provisions limiting the time for bringing an appeal are liberally interpreted so that the party pursuing the remedy of appeal will not be defeated on mere technicalities. * * *" 3 Sutherland, Statutory Construction, supra, at 334-335.

■ We hold that the enactment of ORS 19.026(1) did not result in a repeal of ORS 539.150(4) by express provision or implication. The motion to dismiss is denied.

ON THE MERITS

*Carrell F. Bradley,* Hillsboro, argued the cause and submitted a brief for appellants.

*James C. Maletis,* Portland, argued the cause and submitted a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

O'CONNELL, J.

This is an appeal from a decree of the circuit court for Washington county affirming an order of the State Engineer which allowed the contestee, Oregon Iron & Steel Company, 57.5 cubic feet per second (c. f. s.) of water from the Tualatin river for power purposes.

The present appeal arises out of proceedings initiated in 1958 under ORS Ch 539 to determine the relative water rights of various persons to the Tualatin

river and its tributaries. In those proceedings the claim filed by the contestee was contested by the appealing contestants, the nature of whose claims is not made clear in the briefs. With certain modifications[1] the contestee's claim was allowed by the State Engineer. After the State Engineer's findings and order of determination were filed in the circuit court, both of the parties on the present appeal filed exceptions. The circuit court, consisting of three judges, entered a decree affirming the State Engineer's order after a hearing as provided in ORS 539.150. One judge dissented. The contestants appeal.

The contestants contend that the evidence does not support the State Engineer's order or the circuit court decree either as to the priority date of July 25, 1906 or as to the quantity of water awarded to the contestee. Until these proceedings were instituted the contestee had not made an application to appropriate the water in question as required by ORS 537.130, although each year since 1912 it had filed with the State Engineer an Annual Statement of Water Power Claimant as required by ORS 543.720.

Contestee concedes that it has not complied with the Water Code of 1909; its claim is based upon the alleged fulfillment of the statutory requirements governing the establishment of water rights in 1906 when it initiated its claim to the waters of the Tualatin river. The applicable statutes are compiled in Title 40, Ch II, Bellinger & Cotton Annotated Codes & Statutes of Oregon (1902), embracing §§ 5022 to 5044. The principal question on appeal is whether contestee complied with the provisions of these statutes.

[1] Contestee initially claimed a right to 91.5 c.f.s. with a priority date of 1866. The State Engineer's order allowed contestee 57.5 c.f.s. with a priority date of July 25, 1906.

■ It is established that on July 25, 1906, contestee posted its notice for the appropriation of water from the Tualatin river. This was required by § 5026 as the initial step in establishing a water right. At the time of posting the notice contestee had already established a right to 30 c.f.s. of water from the Tualatin river. The posted notice was for the appropriation of water in addition to this amount. The water was to be diverted from the Tualatin river through an existing canal to Oswego lake and thence to contestee's hydroelectric plant, which had not yet been constructed at the time the notice was posted. After posting the notice the contestee filed a copy of the notice with the county clerk of Clackamas county, purporting to comply with § 5027, which is set out in the margin.[9] Contestee failed to file a map showing the route of the canal, as required by the statute. The failure to do so is relied upon by contestants as one of several al-

---

[9] "§ 5027. Maps of Description and Definite Location to be Filed.

"Within ten days from the date of posting such notice, such appropriator shall file for record in the office of the county clerk or recorder of conveyances, as the case may be, of the county in which said ditch or canal or flume or pipe line, distributing ditches, reservoirs, and feeders are situated, a similar notice, and at the same time shall file a map showing the general route of said ditch or canal or flume or pipe line; and in case said ditch or canal or flume or pipe line, distributing ditches, reservoirs, and feeders shall not lie wholly in one county, such notice and map shall be filed in the office of the county clerk or recorder of conveyances of each county in which any portion of said ditch or canal, flume, pipe line, distributing ditches, reservoirs, and feeders may be situated. Within sixty days from the completion of such ditch or canal or flume or pipe line, such appropriator shall in like manner file a map of definite location of said ditch or canal or flume or pipe line, by legal subdivisions of the land traversed thereby in case it is surveyed, with the points of location of reservoirs, if any, designated thereon. It shall be the duty of every county clerk or recorder of conveyances, immediately upon the filing of such notice in his office, to record the same in a book kept for such purpose, and he shall file and preserve such maps among the records of his office."

leged fatal defects in the procedure by which contestee attempted to perfect a water right. We shall now examine this contention.

ORS 539.010 (6) provides as follows:

"(6) Where appropriations of water attempted before February 24, 1909, were undertaken in good faith, and the work of construction or improvement thereunder was in good faith commenced and diligently prosecuted, such appropriations shall not be set aside or voided in proceedings under this chapter because of any irregularity or insufficiency of the notice by law, or in the manner of posting, recording or publication thereof."

This curative section of the statute is applicable to the circumstances of the present case and we hold, therefore, that the failure to file the map is not itself a ground for defeating contestee's claim.

A more difficult problem is presented by contestants' second contention. It is asserted that the requirements of § 5031 were not satisfied. This section provides, as follows:

"§ 5031. Actual Construction, When to be Begun.

"Within six months from the date of the posting of the notice above prescribed, the persons, companies, and corporations proposing to appropriate the water therein mentioned shall commence the actual construction of their or its proposed ditch or canal or flume or pipe line, and shall prosecute the same without intermission (except as resulting from the act of God, the elements, or unavoidable casualty,) until the same be completed; and the actual capacity of said ditch or canal or flume or pipe line when completed shall determine the extent of the appropriation, anything contained in the notice to the contrary notwithstanding. Upon a compliance with the provisions of this act, the right to the use of the water appropriated shall relate back to the date of posting said notice."

Contestants argue that § 5031 was not complied with in two important particulars; (1) in that actual construction was not commenced within six months after posting the statutory notice, and (2) in that the contestee did not, with reasonable diligence, prosecute the work necessary to divert the water. It is further argued that the right to appropriate the water was lost by abandonment, relying upon § 5041.[9] The resolution of these questions of fact is not without difficulty because, as would be expected, with the passage of time the evidence relating to the contestee's work on the project is not specific. However, our examination of the record convinces us that the contestee met the requirements of § 5031.

█ Although § 5031 provides that the "construction" of the proposed canal or other water way shall be commenced within six months from the date of posting notice, the statute does not require the construction of a new canal when an existing canal may be adapted to the needs of the water claimant. If such an adaptation is proposed claimant must, however, begin his improvements within the six-month period and prosecute the work without intermission, as required by § 5031. The precise date when contestee commenced work on the canal was not established.

As we have already stated, the contestee posted its notice of appropriation on July 25, 1906. The six-month period specified in § 5031 expired on January 26, 1907. There is no *direct* evidence that work was commenced prior to the latter date. There is, however, evidence from which it is reasonable to draw an inference that such was the case.

Contestee introduced into evidence, without objec-

[9] See note 7 in the margin.

tion, a letter dated March 8, 1907, written by its attorney, the pertinent part of which was as follows:

"March 8, 1907.

"Mr. A. S. Patullo
Oregon Iron & Steel. Co.

Dear Sir:

"In reply to your inquiry as to what further steps should be taken by your company in appropriating the waters of the Tualatin River for electric power I would state that the Oregon Code provides as follows: [setting out language of § 5031].

"You state that the company has already put in a head gate at the intake from the Tualatin, that the dam has been reconstructed and that the ditch is being cleared. You should continue the work without intermission, putting in the ditch or flume from Sucker Lake to the site of the power plant on the banks of the Willamette and erect the power plant, install machinery and commence using the water. The law provides that the company shall be taken and deemed to have abandoned its appropriation, if it neglects to use the ditch for a period of two years at any time, and the water appropriated shall revert to the public and be subject to other appropriations in order of priority."

From this letter, it is apparent that the contestee had done a considerable amount of work on the project sometime between the posting of the notice and March 8, 1907. To sustain contestants' objection that the work had not been commenced within the six-month period ending on January 26, 1907, we would have to assume that all of this work was postponed until after that date and was performed in a period of less than 40 days between January 26, 1907 and sometime before March 8, 1907, when contestee reported the progress of its work to its attorney. We believe that con-

testee is entitled to a more favorable interpretation of this evidence. We are dealing here with acts which occurred approximately 55 years ago. Until these contestants' claims were asserted in this proceeding contestee used, without challenge, the water it was awarded by the decree. Since 1912 contestee has filed an Annual Statement of Water Power Claimant as required by ORS 543.720. This form of statement has been referred to as the substantial equivalent of an application for a permit to use water as required by ORS 537.130. See *Re Water Rights of Hood River,* 114 Or 112, 186-187, 227 P 1065 (1924), appeal dismissed *sub nom Pacific Power & Light Co. v. Bayer,* 273 US 647, 47 S Ct 245, 71 L Ed 821 (1926).

In the face of the competing demands for the water of the Tualatin river it is not unreasonable to attach some weight to this long unchallenged use. Under such circumstances we believe that the evidence adduced by contestee should be regarded as establishing the timely initiation of its project in conformity with the requirements of § 5031. We so hold. We also hold that the evidence is sufficient to establish the diligent prosecution of the work as required by § 5031.

In addition to the evidence already recited relating to the reconstruction of the dam and the construction of a head gate, it was shown that between 1906 and 1909 contestee performed a considerable amount of work in cleaning out the canal from the river to the lake. In a memorandum dated September 16, 1909 recording the condition of the canal it was stated that "[t]he canal was cleaned out so as to make it six feet wide at the narrowest place." The canal is 2½ miles long. Considering the limited capacity of dirt removing equipment at that time, it is reasonable to assume that the work would require a substantial period of

time. The contestee's power plant was built in 1909 (and it has been in operation continuously since 1910). The penstock leading to the turbine was approximately 1,000 feet in length. It consisted of a pipe about five feet in diameter bound together by metal bands. These bands, approximately 15,000 in number, were fabricated by contestee prior to the autumn or fall of 1909. The manufacture of these bands must have required a considerable amount of time.

From the evidence it is reasonable to infer that contestee was proceeding with reasonable diligence as that term has been defined by our previous cases.[4] We have not overlooked the evidence adduced by contestants. That evidence was weak.[5] It was not sufficient to overcome the inference of contestee's prompt initiation of the work on the canal and its diligence in continuing the project.

Having concluded that contestee fulfilled the requirements of § 5031, its appropriation of the water upon the completion of the canal and power plant relates back to July 25, 1906, the date upon which notice was posted.[6]

---

[4] See Re Rights to Waters of Silvies River, 115 Or 27, 61, 237 P 322, 335 (1925); Re Water Rights of Hood River, 114 Or 112, 131-133, 227 P 1065, 1071-73 (1924), appeal dismissed, *sub nom* Pacific Power & Light Co. v. Bayer, 273 US 647, 47 S Ct 245, 71 L Ed 821 (1926); Pringle Falls Power Co. v. Patterson, 65 Or 474, 485, 128 P 820, 132 P 527, 529 (1913).

[5] For example, contestants' witness Cook testified as follows:
"Q. And then did you see any evidence of there having been any work in there during the years 1906 to 1909?
"A. No, I never noticed any work had been done. They might have been some done. I never noticed any.
"Q. At least when you were there, there wasn't any going on?
"A. Not that I know of. But I wouldn't be home very long."

[6] § 5031 provides in part that "[u]pon a compliance with the provisions of this act, the right to the use of the water appropriated shall relate back to the date of posting said notice." See also,

■ Contestants argue that the right claimed by contestee was lost by abandonment.[7] The alleged failure of contestee to use the water from July 25, 1906 until sometime in 1910 is relied upon as a basis for the abandonment of the water right. But, it was during this period that contestee was perfecting its right. Until the project was completed it had not acquired any rights that could be abandoned. During the period in question contestee proceeded diligently. That was sufficient to establish its water right. Thereafter there was no evidence of abandonment.

■ Finally, contestants contend that if contestee is entitled to any water right the maximum amount would be 30 c.f.s. The State Engineer and the circuit court allowed contestee the right to use 57.5 c.f.s. The State Engineer's award was made after an exhaustive investigation and study of the water flow in the Tualatin river and its tributaries, including the canal in question, during various periods of time beginning as early as 1906. This study also covered the reservoir storage requirements of the contestee, the evaporation loss on stored water, and other observations relating to contestee's use and needs. Although contestee claimed the right to 91.5 c.f.s. of water with a priority date of 1866, the State Engineer allowed the contestee 57.5

---

Re Water Rights of Hood River, 114 Or 112, 227 P 1065 (1924), appeal dismissed, *sub nom* Pacific Power & Light Co. v. Bayer, 273 US 647, 47 S Ct 245, 71 L Ed 821 (1926).

[7] Contestants relied upon § 5041, which provides as follows:

"The right to appropriate water hereby granted may be lost by abandonment; and if any persons, companies, or corporations constructing a ditch, canal, flume, or pipe line under the provisions of this act shall fail or neglect to use the same for a period of two years at any time, it shall be taken and deemed to have abandoned its appropriation, and the water appropriated shall revert to the public and be subject to other appropriations in order of priority; but the question of abandonment shall be one of fact, to be tried and determined as other questions of fact."

c.f.s. with a priority date of July 25, 1906. It will be recalled that the contestee's original posted notice of appropriation was designed to initiate a claim of water in excess of the 30 c.f.s. previously allotted to it. The subsequent improvements to the canal and to the dam were made in order to provide water in addition to that already allotted so that the power plant which was then contemplated and finally built in 1910 would have an adequate supply of water to turn its turbines. The evidence establishes that the plant could not operate with 30 c.f.s. That 57.5 c.f.s. of water was used and was necessary for contestee's needs throughout the period from 1910 to date cannot be established with precision. Proof of such use and need can be arrived at only through piecing together data on flow, storage needs, evaporation loss, leakage and other factors. The State Engineer reached his conclusion after considering these factors. His determination on questions of fact is entitled to great weight upon appeal. From an examination of the record we are convinced that his interpretation of the evidence relating to the use by the contestee of the water of the Tualatin river is sound and that the award of 57.5 c.f.s. is a fair allotment in light of that evidence.

The decree of the lower court is affirmed.