THE GREYHOUND CORP., APPELLANT, *v.* AYERS, REGISTRAR,
BUREAU OF MOTOR VEHICLES, APPELLEE.[*]

(No. 7118—Decided April 23, 1963.)

*Messrs. George, Greek, King & McMahon*, and *Mr. Kiehner
Johnson*, for appellant.
*Mr. William B. Saxbe*, attorney general, and *Mr. Jerry
Weiner*, for appellee.

TROOP, J. This appeal is from the judgment against the
plaintiff, The Greyhound Corporation, and in favor of the de-
fendant, Clifford Ayers, Registrar of the Bureau of Motor Ve-
hicles, rendered by the trial court in an action in declaratory
judgment. The case was submitted to the court upon the plead-
ings, a stipulation of facts, and the briefs and arguments of
counsel.

Appellant, The Greyhound Corporation, presents four as-
signments of error as the basis of this appeal. These assign-
ments of error are refinements of the basic question to be re-

---

[*]Motion to certify the record overruled (38230), September 25, 1963,

solved. The essential question is whether the merger, accomplished under the laws of the state of Delaware, on or about September 30, 1959, operated as a "transfer of ownership" of motor vehicles such as contemplated in Section 4503.12, Revised Code, making the surviving corporation, the Greyhound Corporation, liable to pay a proportion of the annual motor vehicle license tax, as provided in Section 4503.02, Revised Code, for the privilege of operating buses in Ohio following the merger date, when the merged company, Atlantic Greyhound Corporation, had previously paid the tax for a full year prior to the date of merger.

All the essential facts were stipulated in the trial court.

Greyhound, the surviving corporation, is a Delaware corporation, and Atlantic, the merged corporation, is a Virginia corporation. The merger was according to Delaware law. On or about September 30, 1959, the merger was accomplished. Ninety buses were involved in the merger, fifty-six of which were operated in Ohio following the merger date. On March 25, 1960, certificates of title to fifty-six buses were assigned to Greyhound and new certificates issued. When Greyhound made application for new license plates, in March 1960, the Registrar of Motor Vehicles refused to issue the plates unless Greyhound paid the proportionate fee for the period following September 30, 1959.

It was stipulated also that the trial court might take judicial notice of the statutes of Delaware and Virginia.

There appears to be no question in the record that the merger of Greyhound and Atlantic was accomplished according to the statutes of Delaware. As to the effect of that merger on our present problem, resort is had to the language of the Delaware statute. A pertinent part of Section 259 of Title 8 of the Delaware Code reads as follows:

"* * * for all purposes of the laws of this state the separate existence of all the constituent corporations, parties to said agreement, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, * * * possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, * * *."

The laws of the state of Virginia contain essentially the same language respecting succession to the rights and privileges both public and private. Ohio, likewise, in Section 1701.81, Revised Code, has similar language. Subsection (1) says that when the merger or consolidation becomes effective, "The separate existence of all the constituent corporations, except the surviving or new corporation, shall cease, * * *." The section provides further for survival of corporate capacity for particular purposes.

After providing that corporate life shall cease upon merger, provision is made for continuance of corporate existence for certain purposes. The section reads as follows:

"* * * whenever a conveyance, assignment, transfer, deed, or other instrument, or act, is necessary to vest property or rights in the surviving or new corporation, the officers of the respective constituent corporations shall execute, acknowledge, and deliver such instruments, and do such acts, and for such purposes the existence of the constituent corporations and the authority of their respective officers and directors shall be deemed continued notwithstanding the merger or consolidation; * * *."

Counsel for appellant strongly urge that the statutes of the three states provide for a "mere integration" of property interests by the merger process. Further urging the point, counsel argue as follows:

"Clearly the purpose of the merger statutes is to allow the combination of corporations and preserve unimpaired the ownership of all property, and the rights, privileges, powers and franchises of the constituent corporations."

This appeal is not concerned with any theory concerning corporate entity which the respective legislatures intended to incorporate in the quoted statutes. However we may regard the merged corporations, whether real or phantom, as continuing to exist and in possession of rights and privileges, or remaining alive merely for the limited purpose of creating instruments of conveyance, is a matter of no concern.

We are faced with the provision concerning transfer of ownership as contained in Section 4503.12, Revised Code. The pertinent portion is as follows:

"Upon the transfer of ownership of a motor vehicle, the registration of such motor vehicle shall expire, and the original owner shall immediately remove such number plates from such motor vehicle."

We are not left to speculate and inquire about the language of the statute in its application to our present case. Essentially the same question was presented in *Columbus & Southern Ohio Electric Co.* v. *West, Registrar* (1942), 140 Ohio St., 200, which case has not been reversed and must be respected in the instant case.

Counsel for appellant seek to remove this case from the operation of the rule in the principal case on the grounds that the Ohio statute has been amended and that in the principal case a transfer of ownership was admitted. The claimed significant change, upon which appellant relies, is the addition of the words, "as well of a public as of a private nature," in the reference to succession to the rights and privileges by the surviving corporation. Nothing in the opinion in the *Columbus & Southern Ohio Electric case, supra,* indicates that the result turned upon any limited interpretation of the "rights and privileges" passing to the surviving corporation. Incidentally no foreign corporation was involved.

As to the point that a transfer of ownership was admitted in the principal case, let it be noted that it was also admitted that "automobile registration, under Section 6294-1, General Code, is a personal privilege, which is not transferable." Again, these are not points upon which the decision hinges. It might be that we need to observe that a fact is a fact whether admitted or proved. But in any event, after the court notes the two admissions it moves on to the nub of its decision. The court quotes from the Corporation Act of Ohio relative to succession to "privileges" and then holds, at page 204, as follows:

"* * * they do provide generally for the succession by the consolidated company to the 'privileges' theretofore enjoyed by the constituent companies. But it would, we hold, be a forced construction to interpret these general provisions as controlling the sharp and explicit clauses of Section 6294-1, providing that where there is a 'transfer of ownership' the 'registration * * * shall expire' * * *."

The vigorous argument of counsel that Section 4505.04, Revised Code, has a bearing upon our problem deserves notice. The section provides basically that no court in any case at law or in equity shall recognize a claim to, interest in, or right or title to, a motor vehicle unless evidenced by a certificate of title. The case of *Kelley Kar Co.* v. *Finkler* (1951), 155 Ohio St., 541, and other cases are cited which apply the statute to particular situations none of which involve the fact pattern we find here. The section is a direction to courts providing a rule to apply where ownership of an automobile is an issue in the trial of a lawsuit. Appellant says in effect that it may not be taxed since a merged corporation, over which it exercised control, did not get around to assigning certificates of title to the buses it acquired by merger agreement, under date of September 30, 1959, until March 25, 1960. Whether the delay was one of neglect or design is immaterial. Section 4503.12, Revised Code, controls the "transfer of ownership" in the matter of the taxation of motor vehicles by the state of Ohio, and the *Columbus & Southern Ohio Electric case, supra,* holds that a merger such as we have here effects a transfer of ownership.

Attention is directed to Section 4503.10, Revised Code, covering the method of application for the registration of a motor vehicle and providing for methods of presenting evidence of ownership. Section 4505.10, Revised Code, provides for transfer of ownership by operation of law. Both have a bearing upon the collection of the taxes on motor vehicles imposed by Section 4503.02, Revised Code.

The statutes dealing with corporations, including those dealing with the mergers of corporations, are general in nature in contrast to the "sharp and explicit clauses" of the sections included in Chapter 4503 of the Revised Code, particularly Section 4503.12, Revised Code, dealing with the taxation of motor vehicles by the state of Ohio for the privilege of operating them upon the roads of the state.

The trial court correctly held that a "transfer of ownership" within the meaning of Section 4503.12, Revised Code, occurred when The Atlantic Greyhound Corporation was merged into The Greyhound Corporation on September 30, 1959. *Columbus & Southern Ohio Electric Co.* v. *West* (1942), 140 Ohio

58

St., 200, the authority followed by the trial court, still stands unreversed and provides the rule to be applied in the instant case.

Judgment of the trial court is affirmed.

*Judgment affirmed.*

DUFFEY, J., concurs.

BRYANT, J., dissenting.  Because the Atlantic Greyhound Corporation was the sole owner of the buses here involved, because it had paid the full amount of the motor vehicle license taxes on such buses for the year starting April 1, 1959, and ending March 31, 1960, and because the certificates of title were not assigned until March 25, 1960, and such assignment was pursuant to the merger agreement and therefore constituted an exception to the general provisions as to the passage of title to property, I conclude that the Atlantic Greyhound and the Greyhound Corporation had a right to do just what they did here. In other words, I am of the opinion that having paid the tax for the full twelve months, Atlantic Greyhound could make conveyance at any time they chose and that they were fully authorized to select the date they did.

Of course, had these two corporations chosen September 30, 1959, which they did not, and had they made the assignments of certificates of title as of that date with the Greyhound Corporation beginning operation of the buses on that date, the result would be entirely different and the contentions of the Registrar of Motor Vehicles would be tenable.

I know of no law which provides that the merger agreements must automatically pass all the title to all the property on any particular date.  Here, the registrar admits the certificates of title remained in the name of Atlantic Greyhound until March 25, 1960.  He admits also that assignment on that date was pursuant to the merger agreement.  The registrar, however, insists that title to the buses passed on September 30, 1959, and hence an additional $18,000 is due.

The majority opinion relies upon the case of *Columbus & Southern Ohio Electric Co.* v. *West, Registrar* (1942), 140 Ohio St., 200, decided by a divided court with two judges vigorously

dissenting. The *West case, supra,* so far as I can ascertain in Shepard's Ohio Citations, has nowhere been cited in the nearly twenty-one years since it was announced. The *West case, supra,* in my opinion, is distinguishable. So far as the facts are concerned it was not denied, according to Bettman, J., author of the opinion, that title to the vehicles had passed and I presume that means on May 13, 1937, at the instant the consolidation or merger took place.

This is entirely different from the facts here where the date on which title passed is the chief issue. It will also be observed that the principal operative facts in the *West case, supra,* took place in 1937. The registration year in question began April 1, 1937, and the merger took place on July 13, 1937. Both of these were prior to the effective date of Ohio's then new Certificate of Title Law. (Section 6290-2 *et seq.,* General Code, now Section 4505.01 *et seq.,* Revised Code.)

As the facts seem to me to be materially different and the opinion in the *West case, supra,* does not discuss or even refer to the drastic provisions of the new Certificate of Title Law, I conclude the *West case, supra,* is distinguishable. This may possibily explain the failure of any later decision even to refer to the *West case, supra.* Most directly in point here are the provisions of Section 4505.04, Revised Code, which are as follows:

"No person acquiring a motor vehicle from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has had issued to him a certificate of title to said motor vehicle, or delivered to him a manufacturer's or importer's certificate for it; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title, or manufacturer's or importer's certificate for said motor vehicle, for a valuable consideration.

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.

"(B) By admission in the pleadings or stipulation of the parties."

See *Mielke* v. *Leeberson* (1948), 150 Ohio St., 528, in which the syllabus is as follows:

"Under the plain and unambiguous language of Section 6290-4, General Code, a court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle, without the production of a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the Certificate of Title Law, and any other evidence of ownership is not of sufficient weight to sustain a verdict or judgment where title must be proved as a condition precedent for the validity of such verdict or judgment."

For a review of the history of the Bill of Sale Law and the changes which accompanied the enactment of the Certificate of Title Law, see *Kelley Kar Co.* v. *Finkler* (1951), 155 Ohio St., 541, in which the third paragraph of the syllabus is as follows:

"Under the provisions of Section 6290-4, General Code, an Ohio court cannot recognize the right, title, claim or interest of any person in or to any motor vehicle sold or disposed of or mortgaged or encumbered in Ohio after the effective date of that section of the Code unless such right, title, claim or interest is evidenced by a certificate of title or manufacturer's or importer's certificate duly issued in accordance with the provisions of the Certificate of Title Act."

See, also, *Garlick, Admr.*, v. *McFarland, a Minor* (1953), 159 Ohio St., 539, and also *In re Estate of Case* (1954), 161 Ohio St., 288, the latter case having the unusual facts indicating that a father apparently placed title to a motor vehicle in his daughter to avoid payment of inheritance tax, at the same time retaining many of the indicia of ownership. The title in the daughter was upheld. See, also, *Brewer* v. *DeCant* (1958), 167 Ohio St., 411, in which the second paragraph of the syllabus is as follows:

"Under the Ohio Certificate of Title Act, a change in ownership of an automobile is not consummated until a certificate of title is issued in the name of the purchaser."

As will be noted, the registrar relies upon the first sentence of Section 4503.12, Revised Code (Section 6294-1, General Code), which provides in part that "upon the transfer of ownership

of a motor vehicle, the registration of the motor vehicle shall expire * * *." It should be noted also that this language in practically identical form was included in this statute at the time of its original enactment in 1915 in 106 Ohio Laws, 197. In my opinion that sentence must be construed in light of the enactment of the Certificate of Title Law (117 Ohio Laws, 373), which became effective January 1, 1938.

The majority opinion apparently concludes that under the Delaware Corporation Law, at the instant the articles or agreement of merger were filed, title to all property of the subservient corporation passed instantaneously to the surviving corporation without regard to and in disregard of the express and implied intent of the parties and the provisions of the articles of merger. With this, I do not agree. Obviously, other conditions permitting, Atlantic Greyhound could have assigned the titles to the buses in advance of filing the articles of merger. They could have assigned the title concurrently therewith and I believe that they had the right to, intended to, and so provided that the title should pass on March 25, 1960, and in keeping therewith all the assignments were made on that date and the new titles likewise were issued on that date.

One of the necessary results of the action taken by the registrar is that corporations owning motor vehicles, titled and registered in Ohio, theoretically may convey titles to such vehicles only at the instant of midnight on March 31 of each year, or, from a practical standpoint, during the month of March of each year. Otherwise, they face a penalty of from 25% to 100% of the total year's tax. But that is not the issue here. On the contrary it may be admitted that such is the case.

The issue here is whether the registrar in clear disregard of the intentions of both Atlantic Greyhound and Greyhound Corporation and in complete disregard of clear and unambiguous provisions of the Ohio Certificate of Title Law (Chapter 4505, Revised Code) may determine that some sort of involuntary transfer of title took place on September 30, 1959, and without any evidence whatsoever, stipulated or otherwise, that Greyhound operated such vehicles in Ohio during that period, require Greyhound to pay this tax a second time.

I am likewise at a loss to understand the authority for this or any other court in Ohio to give recognition to the pass-

age of titles from Atlantic Greyhound to the Greyhound Corporation when it is clearly stated in the Certificate of Title Law that no such recognition shall be given.

The argument has been advanced that the treatment accorded to the Greyhound Corporation and to the Atlantic Greyhound Corporation is the same treatment which would be accorded to an individual under like circumstances. May I suggest that I doubt this. It has never come to my attention that where "A," the owner of a motor vehicle, agreed with "B" to convey title to "A's" motor vehicle on March 25, the registrar disregarded the date on which the assignment of the certificate of title was made and the new title was issued and instead held that on some earlier date the title had passed. It simply is not done that way.

Little light will be shed by further comparisons of individual and corporate transactions because of the obvious dissimilarities clearly recognizable. For the most part, motor vehicles owned by individuals are pleasure cars on which the annual motor vehicle tax is ten dollars a year or slightly under three cents a day. For the most part when individuals transfer title to a pleasure car, it is in course of acquiring another car and no problem arises.

Here the amount of double taxation for the fifty-six buses amounts to nearly $18,000. That is considerably different from the sum of $7.50 which would be involved for a like transaction for the individual owner of a single pleasure car. I regard this as an unfair and unjust imposition of tax against an important part of the already impoverished mass transportation industry. It may be stylish to go on long hikes, but I still feel the state and nation desperately need mass transportation.

For the reasons above set forth, I must therefore dissent from the majority opinion.