Argued June 24, affirmed August 26, 1971

O. K. DELIVERY SYSTEM, INC., *Appellant, v.*
HALEY, *Respondent,* BEND-PORTLAND TRUCK
SERVICE ET AL, *Intervenors.*

487 P2d 1391

*James A. Nelson,* Portland, argued the cause and filed the briefs for appellant.

*John H. Socolofsky,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Plaintiff appeals from a decision of the circuit court favorable to the Public Utility Commissioner. The Commissioner had refused to allow, without a hearing, transfer of a common carrier permit from the merged corporation to the surviving corporation.

The facts were stipulated in the circuit court. Prior to the merger, Robinson Transfer and Storage Company did not have a common carrier permit; its parent corporation, O. K. Delivery Company, did have a permit which had been issued pursuant to ORS ch 767. The corporations merged, with Robinson Transfer and Storage Company denominated as the surviving corporation. On the same day, but subsequent to the merger filing, a certificate of amendment was filed with the Corporation Commissioner changing the name of the surviving corporation to O. K. Delivery System, Inc. Both parties concede that this change had no effect on the operation of the merger. The Public Utility Commissioner was requested, but refused, to change its records to show the surviving corporation as the holder of the permit which O. K. Delivery Company had held. Thus, the question is posed: Does a common carrier permit held by a merged corporation by operation of law become the permit of the surviving corporation under the corporation laws of Oregon (ORS ch 57), or must the surviving corporation comply with the transfer provision of the Motor Carriers code, ORS ch 767.

ORS 57.480 (4), which deals with the effects of merger, provides:

"(4) Such surviving or new corporation shall thereupon and thereafter possess all the rights, privileges, immunities and franchises, as well of a

public as a private nature, of each of the merging or consolidating corporations; and all property, real, personal and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged or consolidated, *shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed * * *.*" (Emphasis supplied.)

ORS 767.185 provides:

"(1) No certificate [permit] issued under this chapter or any prior law shall be assigned or otherwise transferred except after hearing as provided in ORS 767.135.

"(2) * * * * *

"(3) No such certificate [permit] or license shall be construed to be a franchise or irrevocable or exclusive or to confer any property right upon the holder thereof * * *."

ORS 57.796 (2) provides:

"(2) Nothing contained in the Oregon Business Corporation Act shall be construed to repeal or to amend the present statutes relating to banks and trust companies, insurance, casualty and surety companies, cooperative associations, industrial loan companies, credit unions, building and savings and loan associations, nonprofit corporations, and other corporations for which special regulation, different from the general private business corporation laws of this state, has existed prior to December 31, 1953."

Special regulation of common carriers existed prior to December 31, 1953, under statutes that preceded ORS ch 767.

Plaintiff contends that the general phrase "and other corporations for which special regulation * * * has existed" found in ORS 57.796 (2), cannot be con-

strued to include corporations specially regulated under Public Utility Commissioner statutes. The basis of plaintiff's contention is *ejusdem generis,* a doctrine which is that where general words are used following specific words in an enumeration, the general words will be restricted to the same meaning as the specific words. If the doctrine were strictly applied to ORS 57.796 (2), the only corporations whose mergers would be affected by that section would be those enumerated; namely, "banks and trust companies, insurance, casualty and surety companies, cooperative associations, industrial loan companies, credit unions, building and savings and loan associations, [and] nonprofit corporations." Even if liberally applied, we think that the use of the doctrine *ejusdem generis* would be inappropriate.

The Motor Carriers Act, ORS ch 767, applies to all operators of motor carriers whether individual, partnership or corporate, ORS 767.015; whereas, ORS ch 57 is limited to corporations. Moreover, ORS ch 767 operates in a completely different domain than that characterized by the enumerated statutes in ORS 57.796 (2). The former does not deal with formation of common carrier companies, issuance of stock or their internal operations. Rather, its emphasis is on the licensing and regulation of common carriers. That ORS ch 767 does not fall within the ambit of "special regulations" in ORS 57.796 (2) is not dispositive of the issue before us.

We believe a more apt rule for resolving this apparent conflict in statutes is that repeated with approval in *Appleton et al v. Oregon Iron & Steel Co.,* 229 Or 81, 84, 358 P2d 260, 366 P2d 174 (1961):

"'* * * An implied repeal of prior statutes

will be restricted to statutes of the same general nature, since the legislature is presumed to have known of the existence of prior special or particular legislation, and to have contemplated only a general treatment of the subject matter by the general enactment. * * *' " (1 Sutherland, Statutory Construction 486 (3d ed 1943).)

For essentially the same reasons that ORS ch 767 cannot be considered to contain "special regulations" within the meaning of ORS 57.796 (2), it also cannot be termed "of the same general nature" as ORS ch 57. Accordingly, the operation of ORS ch 767 must supersede that of ORS ch 57.

In addition to this general authority, we find specific support for our conclusion in a case decided by the Ohio Court of Appeals, *Greyhound Corp. v. Ayres,* 119 Ohio App 53, 196 NE2d 459 (1963). Faced with a similar conflict between corporate merger statute and motor vehicle code, that court concluded the latter should prevail. This was based upon the strong public interest in regulating the transfer of licenses, and the more natural conclusion attained by its decision as opposed to the "forced construction [by interpreting] these general provisions [of the corporate merger statute] as controlling the sharp and explicit clauses" of the common carrier regulations statutes. 119 Ohio App at 56.

Our above conclusions render unnecessary any consideration of other arguments advanced by the parties directed toward the same question.

Affirmed.